THE STATE, Respondent, v. BALL, Appellant.

1. In the case of a conviction for an offence not capital, an omission to enter of record the *allocution*, or formal address of the judge to the prisoner asking him if he has any thing to say why sentence should not be pronounced against him, is not of itself fatal.
2. In the entry of the empannelling of a jury, the jury were stated to be "twelve good and lawful men," and their names were given, but the same name was inserted twice, making thirteen in all; *held*, that this was merely a clerical error.
3. An affirmative verdict, in response to an indictment for murder in the first degree, of "guilty of murder in the second degree, in manner and form as charged," &c., is by implication an acquittal of murder in the first degree, and, so long as it stands, it is a bar to any prosecution for the higher grade of offence.

*Appeal from St. Charles Circuit Court.*

The instructions numbered one and five, mentioned in the opinion of the court, are as follows: " 1. If the jury believe from the testimony that Ball formed a determination in his own mind to kill Mark; that this determination was deliberately formed before the act of killing took place; and that after such determination was so formed, he did in pursuance thereof commit the act of killing in the manner charged in the indictment, then the prisoner is guilty of murder." " 5. If the jury believe from the evidence that the defendant had reasonable cause to apprehend a design on the part of the deceased to kill or rob him, or to do him some great personal injury, and had reasonable cause to believe he was in immediate danger of such design being accomplished, and he shot and killed deceased under these circumstances, you should acquit him on the ground of justifiable homicide;

and in such case it makes no difference whether defendant was at that time in any real or actual danger or not."

*U. Wright,* for appellant.

I. Illegal evidence was permitted to go to the jury against the defendant. The case made by the proof is not the case charged. The first instruction is not law. Every fact hypothetically stated in this instruction may be true and yet no crime be committed, much less murder. The error is not cured by a separate and independent instruction touching justifiable homicide. (See State v. Phillips & Ross, 24 Mo. 491.) Self-defence includes both a design to kill and the deliberation necessary to make that design effectual. The verdict was not responsive to the charge in the indictment of murder in the first degree. (See Plummer's case, 6 Mo. 232.; Watson's case, 5 Mo. 497; State v. O'Blenis, 24 Mo. 402; State v. Phillips & Ross, 24 Mo. 475; 9 Yerg. 333; 6 Humph. 410.) The jury was an illegal body, being thirteen in number. (3 S. & R. 237; 8 Blackf. 561; 2 Penning. 663.) The record is conclusive of the fact. It does not conclusively appear that the defendant was present when the judgment was rendered; nor does it appear that the defendant was asked before judgment whether he had any thing to say why judgment should not be executed. (2 Salk. 630; 3 Salk. 358; 4 Black. Comm. Appendix; 6 Barr, 384; 4 Harris, 129.)

*Mauro,* (circuit attorney,) for the State.

NAPTON, Judge, delivered the opinion of the court.

In capital cases the record should show that the prisoner was present when the verdict is rendered, and that he was asked, before judgment pronounced, if he has any thing to say why sentence of death should not be passed. In England, this is considered necessary even in clergyable felonies; but no decisions have been found in that country where the omission of the *allocution* alone is held fatal except in cases of high treason. (1 Chitty C. L. 700; 2 Salk. 630; 3 Salk.

358.) We observe no case in this country where the judgment has been reversed for this clause alone, even where the case was a capital one, though in Hamilton v. The Commonwealth, 4 Harris, 133, this is one of the grounds of reversal. In that case it also appeared that the prisoner was not present when the verdict was rendered; or rather the record failed to show that he was present. Whether, under our practice, it would be necessary to reverse a judgment in a capital case because of the omission on the record of what is termed the *allocution*, or the formal address of the judge to the prisoner asking him why sentence should not be pronounced, when the record shows that he was present during the whole trial and at the rendition of the verdict and judgment and that he filed his motion for a new trial and in arrest of judgment, it is not necessary in this case to determine. The reason given for the importance attached to this form in England is, that the revising court may see that the prisoner had an opportunity of moving in arrest, or of pleading a pardon. It would not be material here whether a pardon was produced before or after judgment, as no attainder or other such consequences result from a capital conviction here, which a pardon even after judgment may not remove. It is sufficient that the case under consideration is not a capital one, and the omission complained of is therefore unimportant.

The objection that the defendant is not shown to be present when the verdict and judgment were rendered, is not in our opinion sustained by the record. The entry is, " Now at this day appears the said plaintiff (the State) by attorney, and the said *defendant was brought into court* and appeared by his attorneys," &c. It seems the defendant and his attorneys were both present.

Nor, in our judgment, is the objection that there were thirteen jurors borne out by the record. The record states that the jury was composed of twelve good and lawful men, and gives their names, but the name of one of the jurors is

put down twice. This is a clerical error, which appears on the record to be such merely, and can do no harm.

The verdict in this case is, " that the defendant is guilty of murder in the second degree in manner and form as charged in the said indictment, and said jurors assess the punishment of said defendant to imprisonment in the penitentiary for ten years." In Plummer's case, 6 Mo. 232, the jury expressly found the defendant not guilty of murder in the first degree, and then found him guilty of some other grade of homicide embraced in this indictment. The verdict in this case, by necessary implication, finds the same thing. A conviction of murder in the second degree necessarily acquits of murder in the first degree, and the verdict in the latter case, so long as it stands, unquestionably bars any prosecution for the first named offence. Whether such a verdict would prevent an inquiry into the crime of murder in the first degree, if it was set aside and a new trial awarded, is a question not important to be determined in this case.

It is contended that instructions No. 1 given for the State and 5 given for the prisoner, are inconsistent and calculated to mislead, and that at all events instruction No. 1, considered as an independent instruction, is wrong. If we could see any ground for this construction placed upon the instructions, it would beyond doubt be the duty of this court to reverse the judgment. But we do not so understand them. It will be observed that instruction No. 1 is upon the subject of murder in the first degree, and contains an explanation to the jury of the facts and circumstances necessary to be found by them in order to convict the defendant of this crime. Instruction No. 5 is upon the subject of justifiable homicide, and is explanatory of the facts and circumstances appropriate to this defence. Each instruction is conceded to be abstractly correct, provided it be understood that the one is only applicable in the event that the other is not. This implication is, we think, a necessary one, and without which the instructions would lead to the grossest absurdity. If both instructions had been on the same topic, this implication

might not be so apparent, and therefore in many cases heretofore, as in Phillips' case referred to, this court has found it necessary to reverse for giving such instructions. This has been done because the instructions might mislead. But how could the jury have been misled in this case? It could only be by supposing they were willing to act upon instructions, which, interpreted as they are now said to be susceptible of being, would involve plain and palpable contradictions. But it is not easy to see how a jury of sensible men could be misled by the instructions in this case. Their attention is first directed to murder in the first degree and its constituents, and they are directed, if they find the facts as therein specified, to find the defendant guilty. They are afterwards instructed upon another view of the case suggested by the defendant's evidence and tending to show a case of justifiable homicide, and that branch of the law is explained to them and the facts necessary to constitute the justification are pointed out. Is it possible that the jury could have been so far misled, by the omission of the court to advise them that those two hypothetical views of the case were totally independent of each other, as to suppose that they must convict the defendant of murder in the first degree, notwithstanding they might find the facts to be as hypothetically put in the instruction explanatory of justifiable homicide? Instructions No. 1 and 6 for the State are upon the subject of murder, and leave out of view the subject of justifiable homicide, which is afterwards fully explained in an independent instruction. Is it reasonable to suppose that the jury would take the law in the first instructions and apply it to the facts or hypothesis referred to in the second, or that they would apply the law laid down in the second to the hypothetical facts of the first? They could not do so without arriving at manifest contradictions; but understanding the instructions as we must suppose they did, no obscurity or confusion resulted. If instruction No. 5 had been intended as a modification of instruction No. 1 upon the subject of murder in the first degree, a different inter-

pretation of the two instructions might have been possible; and in such a state of even possible uncertainty and misunderstanding it might be proper for this court to order a new trial.

The points made here in relation to the admission of certain evidence are not preserved. No exception was taken to the admission of any evidence on the trial.

The judges concurring, the judgment is affirmed.