THE STATE, Appellant, v. ELMER MURRAY
and H. F. SCHMIDT.

Division Two, November 14, 1911.

1. INFORMATION: Nuisance: Placing Dead Hogs in Highway.
An information charging that defendants "did unlawfully remove
and place a great number of dead hogs . . . in and near
a certain public road and highway," which is particularly de-
scribed, states facts sufficient to constitute a crime under the
statute (Sec. 4795, R. S. 1909), which makes it an offense to
"remove or cause to be removed and placed in or near any public
highway any dead animal," etc.

2. CONSTITUTIONAL STATUTE: Title: Amendment. The catch
words of Sec. 1574, R. S. 1879, were, "Putting Dead Animals
in Well, etc." The title of the amendatory act of 1881 was, "An
Act to Amend Section 1574, Art. 8, Chap. 24 of the Revised
Statutes, 'Of Putting Dead Animals in Wells,' etc." The subject
of the section, before the amendment, was the prohibiting of
nuisances in certain waters mentioned and in certain other places,
including public roads.   The amendment merely extended the
scope of the law to other waters and other places.   Held, that the
title of the amendment clearly expressed the subject-matter of
the act, and was in entire harmony therewith.

3. ———: More Than One Subject: Amendment.  Where the
provisions of the amendatory act are directly related to each
other and to the subject of the section amended, the amendment
does not contain more than one subject.

4. INFORMATION: Placing Number of Dead Hogs and Chickens
in Highway: Separate Offenses.  The placing of each dead hog,
dead chicken, dead turkey, in a public road is not a separate offense,
and the information which charges that defendants placed "a
number of dead hogs, dead chickens, dead turkeys . . . in
a certain public road" does not charge two or more offenses in
the same count, where the placing of the several objects creating
the nuisance is charged as one act committed at one time and
place.

5. ———: Nuisance: Two Offenses: Placing Dead Hogs in High-
way: Permitting Them to Remain There. Placing dead hogs in a
public highway and permitting them to remain there up to the
time of filing the information do not constitute two offenses
under the statute (Sec. 4795, R. S. 1909), and an information
charging both is not duplicitous.   It is essential to a conviction

to prove that the dead animals were not only placed and removed to the highway, but that they were so placed or removed "to the annoyance of the citizens of the State." The averment in the information that the nuisance is continued up to the filing thereof, is in conformity with approved precedents, but is not essential to a further prosecution for failure for three days after conviction to abate the nuisance, which is what the words "and if such nuisance be not removed within three days thereafter" mean.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State; *Harvey D. Dow* of counsel.

(1) The amendment of 1881 does not contravene section 28, article 4, of the Missouri Constitution. Burgdoerfer Case, 107 Mo. 30. (2) The amendment to the act of the Legislature, approved March 26, 1881 (Laws 1881, p. 114), prohibiting persons removing or placing in public roads or highways, or in the streams or water courses other than the Missouri or Mississippi rivers, is presumed to be constitutional. If there is a doubt existing as to the constitutionality of the act, it must be resolved in favor of its validity. Ex parte Loving, 178 Mo. 203. Every presumption is to be indulged in favor of the validity of the act. State ex rel. v. Aloe, 152 Mo. 477; State v. Cantwell, 179 Mo. 261; State ex rel. v. Railroad, 48 Mo. 471; State ex rel. v. Pike County, 144 Mo. 280; Kesleart v. Shoer, 134 Mo. 10; County v. Griswold, 58 Mo. 192; State v. Walbridge, 119 Mo. 383; State v. Able, 65 Mo. 357; Manker v. Faulhaber, 94 Mo. 430; Endlich on Int. of Stat., sec. 178, p. 246; Railroad v. Van Horn, 57 N. Y. 473; French v. Teschemaker, 24 Cal. 518; Attorney-General v. Eau Claire, 37 Wis. 400; State ex rel. v. Shelton, 136 Mo. 429; Brown v. Buzan, 24

Ind. 194; Slack v. Jacob, 8 W. Va. 612. (3) The title to the act does not violate section 28, article 4, of the Constitution. One of the purposes of this section is to prevent the vicious practice of conjoining in the same bill incongruous matter and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in its title. State ex rel. v. Heege, 135 Mo. 119; State ex rel. v. Ranson, 73 Mo. 86; State ex rel. v. County Court, 102 Mo. 537; Knight Templars' Indemnity Co. v. Jarman, 187 U. S. 206; State v. County Court, 128 Mo. 427; State ex rel. v. Bronson, 115 Mo. 271; State v. Miller, 45 Mo. 495. (4) Another acknowledged reason for section 28, article 4, found in the Constitution, was to have the title to an act to indicate the general contents of the bill, and contain but one general subject, which might be expressed in a few or greater number of words, if they did not mislead as to what the bill contained, and are not designed as a cover to vicious and incongruous legislation. St. Louis v. Witzel, 130 Mo. 616; Ewing v. Hoblitzelle, 85 Mo. 64; State v. Miller, 100 Mo. 439; Cooley's Const. Lim. 175; People v. Mahoney, 13 Mich. 495; State v. Bengsch, 107 Mo. 105; State v. Bockstruck, 136 Mo. 335; Bishop's Stat. Crimes (2 Ed.), sec. 36a. (5) Any section of the statute may be amended provided it be fully set forth. Sec. 34, Art. IV, Constitution 1875, State v. Thurston, 92 Mo. 325; State v. Hendrix, 98 Mo. 374; State v. Bennett, 102 Mo. 356. Where the amendatory act in its prefatory clause says that a certain section of the Revised Statutes is amended by adding certain words thereto, naming them, and the whole clause is set out in full, that clause of the Constitution referring to the amendment of statutes, by inserting or striking out words, is fully complied with. Cox v. Railroad, 174 Mo. 588; State v. Merlin, 137 Mo. 297. (6) The information is not duplicitous. It would be impos-

sible to charge this offense without charging that the offender removed, or caused to be removed, and placed the nuisance in or near a public road or highway or in any stream, etc.   State v. Quinn, 94 Mo. App. 59; State v. West, 157 Mo. 309; State v. Hendrickson, 165 Mo. 262; State v. Hall, 164 Mo. 528; State v. Thierauff, 167 Mo. 429.

*Holmes Hall* and *George F. Longan* for respondents.

(1)   Taking the statute as we find it, beginning with 1855 and down to and including the revision of 1879, a careful reading of the information will show that it does not state facts sufficient to constitute a crime, unless it be charged that dead animals, etc., were placed "in" a public road; and there was never any contention that any filth was placed "in" a public road, but that it was placed "near" a public road, which was not an offense under the statute up to and including the revision of 1879.   (2)   The amendment of 1881 (Laws 1881, p. 114) is in violation of the Constitution of Missouri, as the subject-matter of the bill introduced is not clearly expressed in its title.   Sec. 28, Art. IV, Constitution; State v. Burgderfer, 107 Mo. 30; St. Louis v. Weitzel, 130 Mo. 600; State v. Coffee and Tea Co., 171 Mo. 634; Shively v. Lankford, 174 Mo. 535; State ex rel v. Vandiver, 222 Mo. 254.   (3)   If the information charges any offense at all, and respondents still contend it does not, two separate offenses are charged in each count.   The putting of each dead hog, dead chicken, dead turkey, and each quantity of blood, offal and other filth near the public road (as charged in the first count of the information) or into a watercourse (as charged in the second count of the information) constituted a separate offense.   And the information, in each count, further charges that defendants did then and there knowingly

237 Sup.—11

permit the dead hogs, etc., to "remain" in and near the public road" (first count) and to "remain in said watercourse" (second count) for a period of sixty days and from thence until the filing of the information, or from October until April, or a period of six months; and as the statute since 1865 has provided that if such nuisance is not removed in three days thereafter, it shall be deemed a separate offense, two separate alleged offenses are charged in each count—putting it there is one offense, and allowing it to remain three days is another. Bishop's New Crim. Proc. (4 Ed.), sec. 432; State v. Bridges, 24 Mo. 353; State v. Green, 24 Mo. App. 227; State v. Healy, 50 Mo. App. 243; State v. Harrison, 62 Mo. App. 112; State v. Boyd, 108 Mo. App. 518; State v. Boyd, 196 Mo. 60; State v. Fox, 148 Mo. 517; State v. Blakely, 184 Mo. 187.

KENNISH, P. J.—This is an appeal from a judgment of the circuit court of Pettis county, quashing an information which charged the defendants with the misdemeanor of creating and continuing a public nuisance. An appeal was taken by the prosecuting attorney to the Kansas City Court of Appeals, in which court, on the motion of the respondents, the case was transferred to this court upon the ground that the appeal involved a construction of the Constitution of this State, and the case comes thus before us for decision. No question is raised as to the regularity of the appeal or as to the sufficiency of the record.

The information is in two counts, the first being as follows:

"Comes now Harvey D. Dow, Prosecuting Attorney for the State of Missouri, within and for the body of the county of Pettis, and upon his oath of office as such Prosecuting Attorney, informs the court:

"That, Elmer Murray and H. F. Schmidt on the —— day of October, 1909, at the county of Pettis and State of Missouri, did unlawfully remove and place a great number of dead hogs, dead chickens, dead turkeys, blood and feathers, offal and other filth in and near a certain public road and highway there situate and running from the Sedalia and Longwood road to the new Sedalia and Beaman road, said strip of road being known as the old Sedalia and Beaman road; and did then and there knowingly permit and suffer the said dead hogs, dead chickens, dead turkeys, blood and feathers, offal and other filth then and there to remain in and near said public road for the space of sixty days thereafter, and from thence until the filing of this information, to the annoyance of the citizens of this State then and there upon said public road working, passing and repassing; contrary to the form of the statute in such cases made and provided; against the peace and dignity of the State."

The second count charges an offense in the same form as the first, the only difference being that the place of the offense is alleged to be a certain watercourse and stream, instead of a public highway, as in the first count.

The information is based upon section 4795, Revised Statutes 1909, which provides: "If any person or persons shall put any dead animal, carcass or part thereof, the offal or any other filth into any well, spring, brook, branch, creek, pond or lake, every person so offending shall, on conviction thereof, be fined in any sum not less than ten nor more than one hundred dollars. If any person shall remove, or cause to be removed and placed in or near any public road or highway, or upon premises not his own, or in any of the streams or watercourses other than the Missouri or Mississippi river, any dead animal, carcases or part thereof, or other nuisance, to the annoyance of the citizens of this State, or any of them, every person so offend-

ing shall, upon conviction thereof, be fined for every such offense any sum not less than ten dollars nor more than fifty dollars, and if such nuisance be not removed within three days thereafter, it shall be deemed a second offense against the provisions of this section."

The respondents' motion to quash the information was as follows:

"Come now the above named defendants, and move the court to quash the information filed herein, for the following reasons, to-wit:

"First: Said information does not state facts sufficient to constitute a crime under the laws of the State of Missouri.

"Second: Section number 2234 of the Revised Statutes of the State of Missouri of 1909, under which this action is brought, is unconstitutional and void, for the following reasons, to-wit:

"A.    Said section is unreasonable.

"B.    The title of the bill, introduced to enact said section into a law, did not clearly express the subject-matter of said section.

"C.    Said bill contained more than one subject.

"Third.    Said section is void for the reason that it is an attempt to enact a valid law, by amending an invalid and void law.

"Fourth.    Said section, as it appears in the Revised Statutes of Missouri of 1899, has been changed without authority of the State Legislature.

"Fifth.    The offense charged in the information must be prosecuted by indictment and cannot be prosecuted by information.

"Sixth.    Two separate alleged offenses are improperly joined in each count of said information."

I.    In support of the first ground of the motion to quash, respondents contend that the information does not state facts sufficient to constitute a crime under the Nuisance Statute as it stood from the date

of its enactment in the year 1855 down to and including the year 1879. That part of the present statute upon which the charge was bottomed makes it an offense to "remove or cause to be removed and placed in or near any public highway any dead animal," etc. The information charges that the defendants "did unlawfully remove and place a great number of dead hogs . . . in and near a certain public road and highway," which highway is particularly described. Every element of the statutory offense is charged in the information and with sufficient definiteness to meet all requirements of good pleading. And although we see no reason why the information should be tested by the Nuisance Statute of 1879, it does in fact charge an offense under that law. [Kelley's Crim. Law and Prac., sec. 977; Sec. 1574, R. S. 1879.]

II.   It is next contended that said section 4795 is unconstitutional for the reason that "the title of the bill introduced to enact said statute into a law did not clearly express the subject-matter of said section." By reference to respondents' brief we are informed that this ground of attack upon the law goes back to an amendment of the Nuisance Statute in the year 1881. The law, as it stood in section 1574, Revised Statutes 1879, so far as the facts of this case are concerned, was substantially the same as the present law. The catch words of the section were, "Putting dead animals in well, etc." The title of the amendatory act of 1881 was, "An act to amend section 1574, Art. 8, Chap. 24 of the Revised Statutes 'Of Putting Dead Animals in Wells,' etc."

The subject of the section, before the amendment, was the prohibiting of nuisances in certain waters mentioned and in certain other places, including public roads. The amendment merely extended the scope of the law to other waters and other places, and was

in entire harmony with the subject of the section amended. Discussing the constitutional provision as to the title of an act amendatory of an existing section of the statutes, this court, in the case of State ex rel. v. County Court, 128 Mo. l. c. 440, said: "The practice of legislation by reference to sections of the authorized version of the statutes (without other description of the subject of the amending act) has been followed quite generally in this State on the faith of the early rulings of the Supreme Court approving such methods of lawmaking. So much has been done, and so many rights have been acquired, on the basis of those rulings, that we hold that the question of their correctness ought not to be reopened at this day. We adhere to them and follow them as an expression of the settled law of Missouri. [St. Louis v. Tiefel, 42 Mo. 578; State v. Matthews, 44 Mo. 523; State ex rel. v. Ranson, 73 Mo. 78.]"

The act of 1881 was amendatory of a section of the existing law and dealt exclusively with the subject thereof, and therefore the title of the bill fully conformed with the constitutional requirement. [State ex rel. v. County Court, supra; State ex rel. v. Heege, 135 Mo. 112; State v. Smith, 35 Minn. l. c. 261.]

III. There is no merit in the point that the act of 1881 contained more than one subject. The amendatory provisions of the act were directly related to each other and to the subject of the section amended. That is all the Constitution requires. [State v. Morgan, 112 Mo. 202; State v. Bennett, 102 Mo. 356; State v. Doerring, 194 Mo. 398.]

IV. The main ground upon which reliance is placed to uphold the judgment quashing the information is that "two separate alleged offenses are improperly joined in each count of said information." In support of this point the first proposition urged in respondents' brief is that the placing of each dead

hog, dead chicken, etc., in the public road was a sep-
arate offense; and that as the information .charged
the placing of a great number of said objects in said
place, it charged a corresponding number of offenses
in one count, and for that reason the information
was properly quashed.

Each count of the information charges the remov-
ing and placing of the several objects creating the
nuisance as one act, committed at one time and place,
and it is too plain for argument that this one act thus
charged could not be split up into as many separate
offenses as there were objects constituting the nui-
sance.   [14 Ency. Pl. and Pr. 1100; 2 Bishop's New
Crim. Proc., sec. 867.]

A more serious question remains for considera-
tion.   The information first charges that the defend-
ants removed and placed the alleged nuisance in and
near the public road described.   It then charges, in
the same count, that the defendants knowingly per-
mitted and suffered the said nuisance to remain in
and near the said public road for the space of sixty
days thereafter, "and from thence to the filing of this
information, to the annoyance of the citizens of the
State," etc.   Respondents contend that the informa-
tion thus charges two distinct offenses; one for the
placing of dead animals in the road, and the other for
permitting them to remain there.

A reading of the Nuisance Statute at once dis-
closes the fact that it defines two separate and dis-
tinct offenses, one for putting dead animals, etc., in
wells, and the other for removing or causing to be
removed and placed in or near any public road or
highway any dead animal, etc., to the annoyance of
the citizens of the State; for which offenses different
penalties are prescribed.   So little have the two of-
fenses in common that it is difficult to understand
why they were not set out in separate sections.   The
charge in this case is based upon the second offense

defined in this statute. It is apparent that the offense defined in the first part of the section is complete as soon as the act creating the nuisance is performed, as in the case of an assault, a larceny or other crime of that class. Under the second part of the section it does not follow that an offense is committed by the mere removing or placing of the alleged nuisance in the place mentioned. It is essential to charge, and the State must prove, that the alleged nuisance was not only placed in or removed to the place designated, but that it was so placed or removed "to the annoyance of the citizens of the State." The section concludes with the clause, "and if such nuisance be not removed within three days thereafter, it shall be deemed a second offense against the provisions of this section." In our opinion the words "three days thereafter" do not mean three days after the nuisance is created, but rather three days after conviction. This clause applies to the offense set out in the latter part of the section only, and in addition to the punishment in case of a conviction, it was intended to bring about the abatement of the nuisance, which fact is of at least as much concern to the public as the punishment of the defendant for having created the nuisance.

It was the practice under the common law, and is authorized by statute in a number of states, for the court to make it a part of the judgment in case of a conviction for creating a continuing nuisance, that the nuisance be abated by the defendant within a time fixed by the court, under penalty of punishment as for contempt. But in order to authorize the abatement of the nuisance, it was essential that the information contain a *continuando;* that is, an averment of the continuance of the nuisance until the finding of the indictment. The law upon this subject is concisely stated in 14 Ency. Pl. and Pr. at page 1100, as follows: "If an abatement is sought, an averment

of the continuance of the nuisance is necessary. But if punishment only is sought, such averment may be dispensed with." [2 Bishop's New Crim. Proc., secs. 394, 398, 870 and 871; 29 Cyc. 1288; Taylor v. People, 6 Parker's Crim. Cases, 347; Ashbrook v. Commonwealth, 64 Ky. 139; Commonwealth v. Miller, 139 Pa. St. 77.]

The only difference between our statute and the common law procedure in such cases is that instead of the court being possessed of power to order the nuisance abated, as part of the judgment, the same result is sought to be reached by subjecting the defendant to punishment for a second offense, after failure to remove the nuisance within three days thereafter. And, in order to supply a basis for a prosecution for a failure to abate a continuing nuisance within three days after conviction, it is proper practice to plead a continuance of the nuisance from the time it was created until the filing of the information, as was done in this case.

The information is in exact accord with the form found in section 977 of Kelley's Criminal Law and Practice, a work of high authority on criminal law and forms of criminal pleading under the laws of this State, and we hold that but one offense is charged, and properly charged, in each count of the information. In what is said here we do not decide that in charging the offense defined in the second part of the section it is essential to plead a *continuando* in order to constitute a valid charge thereunder, nor that it is essential so to plead in order to furnish a basis for a subsequent prosecution for failure to remove the nuisance within three days after conviction. What we do hold is that the averment of such continuance of the nuisance is in conformity with approved precedents and does not render the information duplicitous.

The judgment of the circuit court is reversed and the cause remanded, with directions to overrule the motion to quash the information and to proceed with the trial of the case. *Ferriss* and *Brown, JJ.*, concur.