STATE OF CONNECTICUT *v.* JOSEPH AUCLAIR

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 120

Argued March 10—decided June 11, 1976

*Alphonse DiBenedetto,* for the appellant (defendant).

*Glenn E. Coe,* assistant state's attorney, with whom, on the brief, was *Jerrold H. Barnett,* assistant state's attorney, for the appellee (state).

PARSKEY, J. The defendant was convicted by a jury in the former Circuit Court[1] of the crimes of burglary in the third degree, larceny in the third degree, and possession of burglar's tools. Burglary in the third degree is a class D felony.[2] General

---

[1] By Public Acts 1974, No. 74-183, the Circuit Court and the Court of Common Pleas were merged effective December 31, 1974. The defendant was resentenced in 1975.

[2] General Statutes § 53a-35 provides a maximum term of five years for class D felonies.

Statutes § 53a-103. The other two crimes are misdemeanors. General Statutes §§ 53a-124, 53a-106. The defendant was sentenced on those charges to terms of two and one-half to five years, six months, and one year, respectively. The terms were to run consecutively. The defendant filed a timely appeal from those sentences.

Following the decision in *Szarwak* v. *Warden,* 167 Conn. 10, the defendant was resentenced in the Court of Common Pleas to consecutive terms of 360 days, 180 days, and 360 days, respectively. In his appeal from the judgment rendered on the verdict the defendant has questioned (1) the jurisdiction of the Circuit Court over the crimes charged; (2) the denial of the defendant's motion for a mistrial; (3) the failure of the state to establish the defendant's sanity beyond a reasonable doubt; (4) the failure of the court to charge on insanity in accordance with the defendant's request; (5) the court's giving an erroneous and confusing charge on insanity; and, finally, (6) certain rulings on evidence.

The state's evidence established that at 6 a.m. on June 6, 1972, the alarm at the Bell Pump Service Company, hereinafter referred to as "Bell Pump," on Forbes Avenue in New Haven was ringing. Upon investigation the police observed that the door which was the only means of access to Bell Pump had been jimmied open, apparently by means of a screwdriver. Similar jimmy marks were also found on the door to the fire escape from the second floor hallway and on the door to an architect's office also located in the same building. At the rear of the building the officers saw television sets stacked up. The sets, with values ranging from $150 to $500, were later identified as the property of Bell Pump. Upon further search, the officers found the defend-

ant in a crouched position in the furnace room. The defendant was wearing dark clothing and, on his left hand, a black leather glove. Protruding from his rear pocket were two heavy-duty screwdrivers, each about one foot in length. The other black glove was also found on his person. Further search of his person uncovered $25 in bills, three pocket knives, and some credit cards in the name of Mrs. Carl Blanchard, Jr., the wife of one of the architects whose office was located in the building. The defendant denied ownership of the money. The manager of Bell Pump noted that this amount of money was missing from petty cash. At the trial the defendant admitted performance of the criminal acts, differing only in some of the details respecting the manner in which the crimes were committed.

## I

The defendant's two-pronged claim that *Szarwak* v. *Warden,* 167 Conn. 10, deprived the Circuit Court not only of felony but also of any criminal jurisdiction does not require extended comment. *Szarwak* involved a habeas corpus petition and the crime of which the petitioner therein stood convicted was a class D felony. The original sentence imposed in that case was for more than one year. In *Szarwak,* the Supreme Court held that General Statutes § 54-1a was unconstitutional insofar as it permitted the Circuit Court to impose a sentence in excess of one year or a fine in excess of $1000. It remanded the case to the Superior Court with direction to discharge the petitioner from custody unless, within a reasonable time, the sentence imposed by the Circuit Court was vacated and a new sentence was imposed which was within the Circuit Court's constitutional jurisdiction. If, as the defendant claims, the thrust of *Szarwak* was to deprive the

Circuit Court of any final jurisdiction in class D felony cases, then the remand would simply have directed that the habeas petition be granted and that the petitioner be discharged from custody. The fact that it did not do so but instead sent the case back for the purpose of the imposition by the Circuit Court of a constitutional sentence is, at the very least, a tacit recognition by the Supreme Court of the Circuit Court's limited jurisdiction in class D felony cases.

The defendant's further claim that the failure of § 54-1a to contain a bindover provision renders the statute fatally defective is without merit. The presence or absence of a bindover provision by itself is of no constitutional significance. General Statutes § 54-17 gave the Superior Court jurisdiction concurrent with that of the Circuit Court over class D felonies. In any case involving a class D felony, if the state's attorney believes that the offense is of an aggravated nature, so that a sentence of one year or less would be inappropriate in the event of a conviction, he may, by securing a bench warrant, bring the defendant within the jurisdiction of the Superior Court. *State* v. *Stallings,* 154 Conn. 272, 279.

The defendant's additional claim that the effect of *Szarwak* was to render § 54-1a unconstitutional in toto is equally without merit. See *State* v. *Menillo,* 171 Conn. 141, 147. The state correctly observes that conviction and punishment are not necessarily linked in a constitutional sense and that, therefore, the invalidation of a legislatively authorized sentence does not result in the invalidation of the underlying conviction. *Moore* v. *Illinois,* 408 U.S. 786, 800; *Furman* v. *Georgia,* 408 U.S. 238, 239-40; *State* v. *Cofone,* 164 Conn. 162, 163.

## II

According to the transcript the defendant testified on December 11, 1973. The defendant's motion for a mistrial was dated December 12 and was denied by the trial court on that date. In his motion the defendant alleged that tranquilizing drugs which were administered to him significantly affected his mood and ability to testify. In his brief the defendant asserts that he was denied an opportunity for an evidentiary hearing in support of his motion. The transcript filed by the defendant fails to support that assertion. The minutes for December 12 disclose that the jury entered the courtroom at 10:25 a.m., that the attorneys presented summations, that the court charged the jury, and that exceptions were taken. No reference concerning the defendant's motion for a mistrial appears. We have no way of knowing whether anything occurred in open court before the appearance of the jury. Without the pertinent portions of the transcript before us we cannot consider the defendant's claim. *State* v. *Vega,* 163 Conn. 304, 308; Maltbie, Conn. App. Proc. § 310.

## III

The defendant's next claim is that after the issue of his insanity was raised by the testimony of Joyce Millette, a psychiatrist at the Connecticut Valley Hospital, the state failed to carry its burden of establishing the defendant's sanity beyond a reasonable doubt. The defendant's claim is not well taken. In any criminal case in which the issue of insanity is raised the state, in the first instance, may rely upon the presumption of sanity. *State* v. *Conte,* 157 Conn. 209, 212. Once substantial evidence of his insanity is offered by the defendant, the presumption loses all operative effect. *State* v. *Davis,* 158 Conn. 341, 355–56. This does not mean, however, that the state is required to produce expert witnesses in order to sustain a conviction against

a claim of insanity. See *State* v. *Kenyon,* 134 Conn. 43, 48–49. The state may, as it did in this case, rely upon all the evidence in the case to carry its burden. In this case the jury had before it the testimony of officer Pietruszka, who described in considerable detail the manner in which the offenses were committed, the method used for gaining entry into the building and several of its offices, the orderly way in which the television sets were stacked at the rear exit, the hammer which was found next to the television sets, presumably to be used to force open the rear overhead door, and the fact that the defendant was found crouched behind the furnace carrying with him the telltale tools of the burglar's trade, black gloves and heavy-duty screwdrivers. A reasonable inference from that evidence was that this was the work of a typical second-story man and not the product of a diseased mind. If the jury chose to disbelieve Dr. Millette and to conclude that the defendant did not, as a result of mental disease or defect, lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law; General Statutes § 53a-13; there was sufficient evidence for that conclusion. While the job may not have displayed the technique of a Mr. Raffles, it did not look like the work of the explosive, paranoid, compulsive, psychotic schizophrenic described by Millette.

## IV

The defendant requested a charge couched in the following language: "Drug addiction alone does not constitute insanity. However, in this case the claim made in behalf of the accused is that because of a pre-existing mental defect or dysfunction in combination with amphetamine abuse, he is irresponsible for his acts. The test of sanity here is the same as I have explained to you in regard to insanity due to other causes. Though the results

has [sic] come about from his use of drugs combined with mental defect or dysfunction, if he is by that test insane the law will not hold him responsible for his acts." The court recalled that it was Millette's diagnosis that the defendant suffered from three mental problems, namely, schizoid personality of the psychotic type, organic brain damage, and drug abuse, and that it was her feeling that drug abuse when added to organic brain damage resulted in the defendant's schizoid personality. The court also recalled that there was some testimony that the defendant had used drugs prior to the events of June 6, 1972, the date of the offenses. The court then charged that the defense of insanity was not available to the defendant if, on the night in question, he was simply high or was a drug dependent person, but that the defense of insanity was available to him if the jury found that because of his use of drugs the defendant had so damaged his mind that he was then insane. The court's instruction reasonably complied with the defendant's request. *State* v. *Penn,* 144 Conn. 148, 153. The defendant excepted on the ground that the court's charge was not in the specific language of the request. There is no rule of law which requires the court to parrot a litigant's request to charge. *State* v. *Fine,* 159 Conn. 296, 301.

## V

The defendant took no exception to the court's charge on insanity. He claims, nevertheless, that the charge was so clearly erroneous as to constitute plain error and, therefore, that we should consider his claim even in the absence of an exception.

Ordinarily we are not bound to consider any claims of error in the charge which have not been raised at trial. Practice Book §§ 226, 249, 652. "The requirement that either a request to charge be made

or an exception be taken if a portion of a charge is to be assigned as error merely implements the fundamental rule that we do not attempt to review on appeal a question which was never raised in or passed on by the trial court. Our practice 'does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal.' *State* v. *Taylor,* 153 Conn. 72, 86 . . . , cert. denied, 384 U.S. 921 . . . ." *State* v. *Van Valkenburg,* 160 Conn. 171, 174. Exceptions are made in capital cases; *State* v. *Davis,* 158 Conn. 341, 345; *State* v. *Davies,* 146 Conn. 137, 145; *State* v. *Walters,* 145 Conn. 60, 65; *State* v. *Buteau,* 136 Conn. 113, 125; in cases where a new constitutional right not readily foreseeable has developed between the time of trial and that of appeal; *State* v. *Vars,* 154 Conn. 255, 271–72; and in cases where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans,* 165 Conn. 61, 70. No such exceptional circumstances are present here.

While we are not bound to consider claims of error not raised in the trial court, the rule enunciated in § 249 of the Practice Book is not mandatory. *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 674. Even were we disposed to consider the defendant's claim in this case, however, he would have to show "that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him . . . ." *State* v. *Rafanello,* 151 Conn. 453, 457. For such a showing it would have to appear that there was introduced substantial evidence of the defendant's insanity which, but for

the claimed erroneous charge, would in all probability have resulted in the defendant's acquittal of the charges against him on the ground of insanity. We turn then to the evidence for the limited purpose of this inquiry.

In this case the only evidence of the defendant's insanity was supplied by Dr. Millette. It was her expert opinion that the defendant was under a strong, irresistible urge and did not have the insight or the judgment to weigh the consequences of his actions and to conform to what society expected of him. The question for our consideration is whether there was any foundation for that opinion, because if there were not, then the opinion could not serve as a basis for a finding of insanity by the jury. *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 299. In that case the defendant could not have been harmed by the charge on insanity, even if erroneous, since insanity would not properly have been an issue in the case.

In order for an expert to render an opinion he must be qualified to do so and there must be a factual basis for the opinion. McCormick, Evidence (2d Ed.), p. 29. The basis may be derived from the personal observation of the expert; *Donch* v. *Kardos,* 149 Conn. 196, 201; or from other evidence in the case which serves as a foundation for a hypothetical question; *Graybill* v. *Plant,* 138 Conn. 397, 403; *Acme Upholstery Co.* v. *Garber,* 110 Conn. 166, 167–68. The opinion of an expert consists of two parts, the premise and the conclusion. Where the opinion is based on a hypothetical question the premise is supplied by the question. On the other hand, where the opinion is based on personal observation the expert supplies both premise and conclusion. In either event the premise must be founded in fact. Where, as in this case, the premise was supplied by personal observation, that obser-

vation must be reasonably contemporaneous with the occurrence in controversy. *Lippold* v. *Kidd,* 126 Ore. 160, 166. Knowledge gained or observations made long before or long after the matter in controversy are insufficient if during the intervening period there has been a material change of conditions. 2 Jones, Evidence (5th Ed.) § 420, pp. 793–94.

Millette based her opinion on observation of the defendant's behavioral patterns. Even her opinion that the defendant had organic brain damage was based not on the results of his electroencephalogram which was within normal limits, but on his behavioral patterns. She observed him at the Connecticut Valley Hospital between January 12 and April 7, 1972. He had been admitted because of his addiction to heroin, and during his stay he displayed the physiological symptoms of withdrawal from drugs, viz., sweating, cramps, pains, headaches, agitation, and inability to sleep or eat. He required medication for several days before he would relax. Upon his discharge from the hospital on April 7, he was, in Millette's opinion, a drug dependent person in remission. The next time he was seen by Millette was on July 24, 1972, at which time he was, in her opinion, going through the throes of amphetamine psychosis. He was very agitated; he was sweating; his pupils were dilated; he was very paranoid; he had delusions, a loss of appetite, a loss of sleep, irritability, a flight of ideas, a lack of concentration and attention span, and poor memory. There was no evidence that the defendant displayed any of those behavioral patterns on June 6, 1972, the date of the crime, and there was no evidence that he displayed any between April 7 and July 24, 1972. Since Millette did not observe the defendant's behavior on June 6, 1972, and since there was no evidence that at that time he displayed

the behavioral patterns which she had observed on other dates, there was no basis for her opinion concerning the defendant's mental condition on the date of the offense. Opinions lack persuasive force unless they are based on facts obtained from personal observation. *Winnick* v. *Parish,* 142 Conn. 468, 475. We believe that Millette's opinion respecting the defendant's mental condition on June 6, 1972, was too speculative to be accorded significant weight by the trier of fact. See *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 103.

## VI

The defendant questions the admissibility of two records from the Connecticut Valley Hospital. There was evidence that both records were kept in the usual course of business of the hospital and, since both related to the diagnosis of the defendant's condition, they were admissible. *D'Amato* v. *Johnston,* 140 Conn. 54, 61. The defendant's objection that what purported to be Millette's signature on the documents was not in fact hers goes to the weight to be given the documents, not to their admissibility. The defendant takes nothing from that assignment.

There is no error.

In this opinion A. ARMENTANO and D. SHEA, Js., concurred.