STATE OF CONNECTICUT *v.* MEYER BILLER

Appellate Session of the Superior Court

File No. 226

Argued April 21—decided August 13, 1976

*Richard L. Goldblatt,* for the appellant (defendant).

*Jack D. Barnston,* assistant prosecutor, for the appellee (state).

SPONZO, J.  The defendant was arrested late in November, 1973, for failing to obey an order to demolish a certain structure issued to him by a building official of the city of New Haven pursuant to § 124 of the Basic Building Code of the state of Connecticut, hereinafter the code.[1]  On December 10, 1973, the defendant, appearing pro se, pleaded not guilty to an information charging him with one count of failure to demolish an unsafe structure on or about November 19, 1973.  On December 26, 1973, that plea was vacated and the prosecutor, with permission of the court, filed a substituted information charging thirty-eight counts of failure to demolish an unsafe building for thirty-eight consecutive days.  Each day of violation constituted a separate offense under § 18-38 of the ordinances of the city of New Haven.  After the prosecutor filed the substituted information the court told the defendant, who was still appearing pro se, that it would grant a reasonable continuance in order for the defendant to consult with an attorney or research the matter.  The defendant, without objection or exception, elected to be put to plea and pleaded not guilty to each count.  After being informed of his right to a trial by jury, the defendant also elected to be tried to the court.  The defendant stated that he wished to go to

[1] Adopted as an ordinance of the city of New Haven on August 10, 1972, by amendment to title 3, chapter 18 of the Code of General Ordinances of the city of New Haven.

trial on that day. The court advised the defendant to seek the advice of counsel and strongly urged him to retain an attorney in view of the substituted information and pleas. The court continued the matter to January 9, 1974, for that purpose.

On January 10, 1974, the defendant filed a motion for a jury trial and a motion to dismiss. Those motions were assigned for a hearing on January 17, 1974, and both motions were denied on the grounds that the defendant failed to appear and that the motions were not filed seasonably. The record indicates, however, that the defendant appeared later in the afternoon. On January 18, 1974, the case proceeded to trial with the defendant representing himself. The presentation of evidence was completed on January 22, 1974, at which point the court allowed time for the submission of briefs. On January 23, 1974, an attorney filed an appearance for the defendant and moved to make certain offers of proof and to have certain documents marked for identification. That motion was denied.

The defendant was found guilty on all thirty-eight counts and judgment was rendered accordingly. The defendant has appealed to this court. The defendant's principal claims[2] on this appeal are that the court erred in admitting certain testimony, in denying his motion for a jury trial, in failing to grant an oral motion to dismiss, and in refusing to permit counsel to mark documents for identification after the presentation of evidence had concluded. The defendant has conceded that if he does not prevail on the first claim, namely, that certain testimony was erroneously admitted, his assignments of error attacking the sufficiency of the evidence to support his conviction must fail.

[2] In his brief the defendant has expressly abandoned his assignments of error addressed to the court's finding.

The defendant claims that the court erred in admitting the testimony of Walter Krawl, an assistant building inspector of the city of New Haven, who testified that the building in question was structurally damaged in excess of 50 percent. The basis of the defendant's claim is that there was an insufficient foundation laid for the admission of that testimony in that no evidence was introduced to establish Krawl's qualifications as an expert. The defendant maintains that the state had to establish Krawl's qualifications as an assistant building inspector as set out in § 107.6 of the code. The provisions of § 107.6, however, were irrelevant for the purpose of laying an evidentiary foundation for the admission of Krawl's testimony since that section deals exclusively with the requirements for the appointment of assistant building inspectors.

The record reveals that Krawl's qualifications were sufficiently established by the state. The witness testified that he had been employed as an assistant building inspector by the city of New Haven for seven and one-half years, that he was familiar with the code and that he followed its provisions in his occupation. Further, he described his duties which included inspecting all buildings "within the jurisdiction of my area within the city limits of New Haven . . . for violations that are submitted to our office."

"The determination of the qualifications of an expert witness lies in the discretion of the trial court." *State* v. *Smith,* 157 Conn. 351, 356; 2 Wigmore, Evidence (3d Ed.) § 561. Once reasonable qualifications are established, as was clearly done in this case, any objection goes to the weight rather than the admissibility of the evidence. *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280; *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224. We cannot say that the trial court abused its discretion

in allowing Krawl to testify as an expert, especially in light of Krawl's further testimony on cross-examination that he had twenty-eight years of experience in the construction field.

Several of the defendant's claims are addressed to the trial court's denial of certain motions and its refusal to allow counsel to mark certain documents for identification after both sides had rested. Our review of those actions is limited since they were within the court's exercise of its discretion and cannot be overturned unless there has been a clear abuse of that discretion "to the manifest injury of a litigant." *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 702.

The defendant claims that the court erred in denying his motion for a jury trial. On December 26, 1973, the defendant elected to be tried to the court and indicated that he was ready to proceed at that time. The trial was continued only to allow the defendant to consult with and to retain counsel. When the defendant's motion for a jury trial was scheduled for argument, the state was prepared to go forward with the trial.

Section 54-82 of the General Statutes makes provision for an accused in any criminal case, proceeding, or prosecution to elect, when called upon to plead, to be tried by the court instead of by a jury as guaranteed by article first, § 8 of the Connecticut constitution and by § 51-164d of the General Statutes. Accordingly, the defendant had the right to waive a trial by jury and to elect to be tried by the court.

An election to be tried by the court is a voluntary act which amounts to a relinquishment of the right to a jury trial. *State* v. *Rankin,* 102 Conn. 46, 49. Withdrawal of an election to be tried by the court is not a matter of right; *Hallinger* v. *Davis,* 146 U.S. 314; *State* v. *Worden,* 46 Conn. 349; but it may

be permitted by the court in the exercise of its discretion. *State* v. *Rankin,* supra, 50. "If the application for such withdrawal be made seasonably, that is, so that the withdrawal will not unreasonably delay the cause, or impede justice, or otherwise prejudice the State, the court should permit it; whether the court shall do so is for its sound discretion . . . ." Ibid.

The trial court based its denial of the defendant's motion on the grounds that the defendant had failed to appear and that the motion was not filed within a reasonable time. It was within the court's discretion to deny the motion on those grounds since the state was ready to proceed to trial, since the withdrawal could have unreasonably delayed the cause, and since no reason was given in the defendant's motion for his change of election.

The defendant also claims that the trial court erred in failing to grant his oral motion to dismiss which was based on the contention that the defendant could not be found guilty because he was not the owner of the building in question. Section 18-38 of the ordinances of the city of New Haven provides, in relevant part, that: *"Any person* who shall violate a provision of the state building code or who shall fail to comply with any of the requirements thereof . . . shall be punishable by a fine of not more than one hundred dollars ($100.00)." (Emphasis added.) The defendant refused to comply with an order to demolish an unsafe structure issued to him by a building official pursuant to § 124.3 of the code.[3] Subsequently, the defendant was served

---

[3] Section 124.3 of the code provides, in relevant part, that: "If an unsafe condition is found in a building or structure, the building official shall serve on the owner, agent or person in control of the building or structure a written notice . . . specifying the required repairs or . . . requiring the unsafe building or structure . . . to be demolished within a stipulated time. Such notice shall require the person thus notified to immediately declare to the building official his acceptance or rejection of the terms of the order."

with notice of a violation of the building code for his failure to comply with the order of a building official. Under § 122 of the code,[4] the building official of the city of New Haven had authority to institute legal proceedings against the defendant.

The record is replete with facts showing that the defendant considered himself as having accepted "the responsibility for whatever situation may arise with the building" because he was principal of the fund which owned the building. The finding reveals that the city of New Haven sent a notice to the defendant on October 9, 1973, to demolish a building and that on October 10, 1973, the defendant sent a letter to the city objecting to the condemnation order. During the course of the trial the defendant did not raise the issue of nonownership and raises that issue for the first time on appeal. The accused submitted himself to the jurisdiction of the court. *State* v. *Licari,* 153 Conn. 127, 130. The defendant's motion to dismiss was properly denied.

Finally, the defendant claims that the court erred in refusing to allow defense counsel to make certain offers of proof and to mark certain documents for identification. Throughout the proceedings the trial court advised the defendant to consult with and to retain an attorney or to make an application for appointment of counsel. The defendant knowingly and intelligently waived his right to counsel on those occasions. After both sides rested, the defendant requested an opportunity to file a brief and the court continued the matter to the following day for that purpose. On the next day the defendant appeared without a brief but with an attorney who proceeded

---

[4] Section 122.2 of the code provides, in relevant part, that: "If the notice of violation is not complied with promptly, the building official shall request the legal counsel of the municipality to institute the appropriate proceeding at law . . . ."

to make a variety of motions and offers of proof in an attempt to rectify some of the errors made by the defendant in representing himself.

Ordinarily, a court has no discretion to refuse to permit documents to be marked as exhibits for identification. *Duncan* v. *McTiernan,* 151 Conn. 469, 470. The trial court, however, acted within the bounds of its discretion in refusing to allow counsel, in effect, to reopen the defendant's case. The trial had been completed on the previous day. The defendant's attorney attempted to have the documents identified in an effort to establish a foundation for the admission of the documents which never had been laid at the trial.

There is no error.

In this opinion D. SHEA, J., concurred.

PARSKEY, J., (dissenting). The defendant was convicted of violating a New Haven city ordinance which makes violation of the Basic Building Code of the state of Connecticut punishable by a fine of $100. The particular code provision which the defendant was charged with violating was one requiring an owner, agent or person in charge of an unsafe building to demolish it within the time stipulated in a notice from the building official.

Before the commencement of the trial the defendant raised the defense of double jeopardy. His claim was that in July, 1973, he received a notice from the building department to demolish his building because it was unsafe, that he was later arrested and charged with failure to demolish that building, and that on July 18, 1973, he was acquitted of that charge. He claimed further that the present charge was for the same offense because the state did not cite any change in the condition of the building since the defendant's earlier acquittal. In response, the

prosecutor did not claim that the July demolition order was defective in any respect. He stated, rather, that he was relying upon a city ordinance that makes each day's violation a separate offense and then remarked "your Honor, that's the entire basis for the arrest for which Mr. Biller is in court today; namely, that it is a different offense than the offense [for] which he was arrested earlier because they are different days. We are not alleging it is a different building. We are not alleging that it is a different condition. We are alleging that it arose from a different violation. We are alleging failure to demolish an unsafe structure, 665 Washington Avenue, as of November 19." Treating the defendant's defense as a motion to dismiss, the court denied it.

During the trial, Walter Krawl, assistant building inspector for the city of New Haven, testified that he inspected the defendant's building on October 3, 1973, and he subsequently gave his opinion that, on the date he inspected it, the condition of the building was unsafe. On cross-examination the defendant inquired whether the building inspector had caused a complaint to be filed with the prosecutor on prior occasions. Upon objection the defendant claimed that he was "trying to build my situation of double jeopardy, your Honor, and this witness has this." The trial court not only sustained the objection but admonished the defendant that double jeopardy was not an issue in the case.

Later, when the defendant took the witness stand in his own behalf and asked whether he could testify about prior occasions, the court responded that he could not testify concerning any period other than that from October 3, 1973, to December 23, 1973. The defendant thereupon raised the issue of estoppel and asked whether he was precluded from claiming that "this arrest is the exact same arrest

for the exact same condition." The court then replied "I have already ruled that three times, at least three times. You have raised the question of double jeopardy once before today. I have ruled out any questions on that. I am now ruling out any testimony on your part with reference to prior trials. The court has taken judicial notice that the dates and times alleged and prior prosecutions do not pertain to the dates and times alleged in this prosecution. Therefore, there is no double jeopardy."

Although the defendant has not assigned as error the court's disposition of his defense of double jeopardy, the issue is of such great importance, involving as it does a right guaranteed by the constitution of the United States; *Benton* v. *Maryland,* 395 U.S. 784, 794; and one not easily waived; *Menna* v. *New York,* 423 U.S. 61, 62; that we should address ourselves to it on our own motion. Practice Book § 762.

The prohibition against double jeopardy, both at common law and under the federal constitution, was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for the same offense. "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U.S. 184, 187; *State* v. *Vincent,* 25 Conn. Sup. 96, 102.

The offense charged here involved three elements: (1) an unsafe building within the meaning of § 124.1

of the code, (2) an order to the defendant as the owner or person in charge of that building to demolish it, and (3) a failure by the defendant to comply with the order. The prosecutor conceded that the only difference between the two prosecutions was the different day of each offense. That concession for the purpose of the case at bar constituted a judicial admission; *Casale* v. *Casale,* 138 Conn. 490, 493; *Kanopka* v. *Kanopka,* 113 Conn. 30, 38–39; and dispensed with the necessity of producing evidence to establish it. Thus the narrow issue presented by this case is whether in the case of so-called continuing offenses all that the prosecutor has to do is to await the dawn of a new day.

I do not believe that it would be seriously questioned that the defendant could not be tried for a violation on July 19 on the basis of an inspection of the premises on July 18, the date of the earlier charge, even with the additional testimony that the building had not been demolished on July 19. The reason that this is so is because there cannot be a continuing violation unless there is a violation in the first place. The critical question is whether the defendant's building is unsafe. Once that issue has been determined in the defendant's favor a new prosecution is barred unless the state can show a change in the structure since the earlier prosecution. If a new prosecution could be pursued as though the earlier acquittal were irrelevant, then it would make no difference how many times the owner of a building had been acquitted; he could still be subjected to endless prosecutions until a conviction was secured, the very prospect that the double jeopardy defense was designed to avoid. Both at common law and under the federal constitution double jeopardy was erected as an effective bulwark against sunrise prosecutions. I cannot believe that its effectiveness is lost in cases involving so-called continuing violations.

Although there are cases which seem to support the present prosecution, those cases are distinguishable. In *Savage* v. *District of Columbia,* 54 A.2d 562 (D.C. App.), a second prosecution was permitted, after a prior acquittal, for operating a rooming house without a license. In that case, however, the defendant admitted that he never had an occupancy permit and the court was not advised of the ground of the first acquittal. Also, in *People* v. *Johansen,* 66 Cal. App. 343, it was held that prior acquittal or conviction for membership in an unlawful organization is no bar to prosecution for the subsequent continuance of the same offense, but on the facts of the case the court suggested that the earlier acquittal might have been based on the lack of guilty knowledge of the character of the organization. The *Savage* and *Johansen* cases would have been in point if in the former the validity of a document which the homeowner claimed to be a permit was decided in the owner's favor and if, in the latter, the jury in the earlier trial had found that the organization was not subversive.

Although I am persuaded that the prosecutor's statements to the court constituted a judicial admission, even if that is not the case, the action of the trial court in precluding the defendant from offering evidence to establish his double jeopardy defense denied him a fair trial. *Proctor* v. *Sachner,* 143 Conn. 9, 17.

I would reverse and order a new trial and, therefore, respectfully, I dissent.