STATE OF CONNECTICUT *v.* JOSEPH S. HINCKLEY
(11351)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued October 9—decision released December 17, 1985

*Suzanne Zitser,* assistant public defender, with whom were *Jon C. Blue,* assistant public defender, and, on the brief, *Joette Katz,* public defender, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, and *John M. Massameno,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant, Joseph Hinckley, was convicted, after a trial to a jury, of manslaughter in the first degree in violation of General Statutes § 53a-55a.

From this judgment the defendant appeals, claiming: (1) that the trial court erred in its charge to the jury regarding the issue of insanity; (2) that he was denied effective assistance of counsel as a result of an erroneous request to charge, adopted by the court, on the issue of insanity; and (3) that the trial court erred in denying his request to withdraw his jury election so that he could be tried before a panel of three judges. We find no error.

On August 6, 1979, the defendant drove to his former wife's place of employment at a real estate office and knocked on the back door. As his former wife approached the door, the defendant fired a gun at her through the glass portion of the door, the bullet striking her in the chest. The victim staggered back into the office and fell to the floor. The defendant then entered the building and shot the victim twice in the head. The defendant was arrested as he was leaving the scene of the crime.

The defendant was indicted by a grand jury for the charge of murder, in violation of General Statutes § 53a-54a (a). On October 3, 1979, he pleaded not guilty and elected to be tried by a jury of twelve. The defendant subsequently notified the state that he would be relying on an insanity defense, as prescribed by General Statutes (Rev. to 1981) § 53a-13.[1] At trial certain friends and relatives of the defendant testified on his

[1] The relevant statute at the time of the incident was General Statutes (Rev. to 1981) § 53a-13 which provided: INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescrip-

behalf that, after his divorce from the victim in 1976, he became despondent and was unable to manage his financial affairs or to hold a steady job. They further testified that the defendant's condition had significantly deteriorated immediately before the incident. Additionally, two psychiatrists testified that the defendant was legally insane at the time he shot his former wife, concluding that at the time of the incident he was suffering from paranoid schizophrenia that was so severe he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his behavior to the requirements of the law. In rebuttal the state offered the defendant's daughter, who testified that, during the time preceding her mother's death, her father continuously threatened to kill her mother, boasting that he could get away with it "because he knew the law."

Because the defendant admitted that he had shot the victim, the only issue for the jury's consideration was whether or not he was legally responsible for the act. The court instructed the jury upon the principles of law to be applied in determining the extent of the defendant's criminal responsibility. The court charged that, unless the evidence established that the defendant was legally sane at the time of the shooting, a not guilty verdict should be returned. The court charged further upon the defense of extreme emotional disturbance, raised by the defendant for the purpose of mitigating murder to first degree manslaughter. The jury returned a verdict of guilty of manslaughter in the first degree.

## I

The defendant's principal claim on appeal is that the trial court erred in its charge to the jury on the issue

tion. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

See footnote 3, infra.

of insanity by intermingling the statutory definition of insanity, found in General Statutes (Rev. to 1981) § 53a-13, with previously accepted common law definitions of insanity. See *M'Naghten's Case,* 8 Eng. Rep. 718, 722 (1843); *State* v. *Toste,* 178 Conn. 626, 424 A.2d 293 (1979). Although these instructions were twice given to the jury, the defendant not only failed to except to them, but specifically requested the court to incorporate the superceded tests in its charge.[2]

## A

Ordinarily, the defendant's failure to take an exception to the charge would render the claim unreviewable on appeal. Practice Book §§ 854, 3063. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). "The policy behind this rule is both ancient and sound and 'does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occuring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal.' *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362 [1965], cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d. 442 [1966]; *State* v. *Evans,* supra, 66; *State* v. *Tuller,* 34 Conn. 280, 295 [1867]." *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980). The first such exceptional circumstance,

---

[2] The defendant conceded in his brief that he requested most of the challenged instruction. We have held that error induced by an appellant cannot be a ground for reversal and will not be reviewed. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982). Because we hold here that the defendant's claim is not reviewable as an "exceptional circumstance" under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), it is unnecessary for us to consider the problems that may arise when a criminal defendant induces error that truly involves the deprivation of a fundamental constitutional right and a fair trial.

involving a recently discovered constitutional right, is not applicable to the defendant's claim. *State* v. *Evans,* supra, 70; *State* v. *Vars,* 154 Conn. 255, 271–72, 224 A.2d 744 (1966). The defendant contends that the second exceptional circumstance, the deprivation of "a fundamental constitutional right and a fair trial," represents the proper vehicle for this court's review of his claim. Therefore, because the defendant did not raise an objection to the charge as given, in order to review his claim under the *Evans* bypass doctrine we must determine whether it involves the deprivation of a fundamental constitutional right. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson* v. *Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d. 203 (1977).

The defendant argues that the instruction implicates a fundamental constitutional right because the issue of sanity was an essential element of the crime charged, on which the state had the burden of proof beyond a reasonable doubt. In support of his position the defendant cites *State* v. *Kurvin,* 186 Conn. 555, 442 A.2d 1327 (1982), where the defendant, for the first time on appeal, claimed error in the trial court's failure to charge that an essential element of the crime of larceny was the intent permanently to deprive the owner of property. We recognized that "[d]ue process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged; *Patterson* v. *New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d. 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d. 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d. 368 (1970); including intent where intent is one of those elements." *State* v. *Kurvin,* supra, 558. Therefore, because the deficiency in the charge involved the trial court's failure to advise the jury of an essen-

tial element that the state had to prove beyond a reasonable doubt, it "raised a sufficient constitutional issue to satisfy the requirements of *Evans.*" *State* v. *Kurvin,* supra; see *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); *United States* v. *Winship,* 724 F.2d 1116, 1124 (5th Cir. 1984); *Glenn* v. *Dallman,* 686 F.2d 418, 421 (6th Cir. 1982); *Government of Virgin Islands* v. *Brown,* 685 F.2d 834, 839 (3d Cir. 1982); *United States* v. *Natale,* 526 F.2d 1160, 1167 (2d Cir. 1975); *State* v. *Griffin,* 175 Conn. 155, 159, 397 A.2d 89 (1978).

Once sufficient evidence on insanity has been produced to overcome the legal presumption in favor of sanity, it is clear that "the burden rests upon the state, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the [defendant] was legally sane and responsible at the time the offenses were committed." *State* v. *Rossier,* 175 Conn. 204, 209, 397 A.2d 110 (1978); *State* v. *Davis,* 158 Conn. 341, 355, 260 A.2d 587 (1969); *State* v. *Kenyon,* 134 Conn. 43, 49, 54 A.2d 585 (1947); see also *Davis* v. *United States,* 160 U.S. 469, 488, 16 S. Ct. 353, 40 L. Ed. 499 (1895); 2 Wright, Federal Practice and Procedure (1982) § 403.[3]

The failure to instruct upon insanity, when a defendant has introduced some evidence on the issue, would be of constitutional magnitude, because such an omission would eliminate the state's burden of proof on that issue. See *Pate* v. *Robinson,* 383 U.S. 375, 384–85, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); *Blake* v. *United*

---

[3] It is important to note that Public Acts 1983, No. 83-486, enacted after the trial of the present case, modified General Statutes § 53a-13, making insanity an affirmative defense, which, under General Statutes § 53a-12 (b), must be proven by the defendant by a preponderance of the evidence. See *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Rivera* v. *Delaware,* 429 U.S. 877, 97 S. Ct. 226, 50 L. Ed. 2d 160 (1976); *Leland* v. *Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952); cf. *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

*States,* 407 F.2d 908, 911 (5th Cir. 1969); *Whalem* v. *United States,* 346 F.2d 812, 818–19 (D.C. Cir. 1965); *Goforth* v. *United States,* 269 F.2d 778, 779 (D.C. Cir. 1959); *Wright* v. *United States,* 250 F.2d 4, 12 (D.C. Cir. 1957). The defendant here, however, does not claim that the trial court failed to charge the jury on the issue of insanity or failed to include the appropriate statutory definition. Nor does he claim that the trial court failed sufficiently to instruct the jury as to the state's burden of proof on the issue of insanity. He claims only that a component of the particular definition of insanity used in the charge did not comport with the statutory definition. We held jury instructions that intersperse common law and statutory definitions of insanity to be reversible error in *State* v. *Toste,* supra.[4] This decision was not premised, however, on the deprivation of a constitutional right, and thus the error claimed would not have been reviewed under *Evans* in the absence of a timely exception.[5] We merely recognized General Statutes § 53a-13 "as a statutory standard [for insanity] to be invoked in lieu of [any] common law test," and held that the court's inclusion of the outdated insanity charge, in the face of an objection to it, was harmful error because it could only create confusion as to what was the correct standard. Id., 631. Although the trial court clearly has a constitutional obligation to charge the jury on insanity because the state bears the burden of proof on the issue, this circumstance does not transform every deviation from the particular statutory definition chosen by the legislature into a constitutional error.

---

[4] In both *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984), and *State* v. *McCall,* 187 Conn. 73, 444 A.2d 896 (1982), we held that, although the trial court improperly charged the jury with statutory as well as common law definitions of insanity, any error was subsequently rectified by an additional instruction that included only the statutory definition.

[5] Although not mentioned in our opinion in *State* v. *Toste,* 178 Conn. 626, 424 A.2d 293 (1979), an examination of the briefs and trial record establishes that the defendant excepted to the charge as given.

The defendant argues that our recent decision in *State* v. *Torrence,* 196 Conn. 430, 493 A.2d 865 (1985), establishes that his claim does raise an issue of constitutional dimension warranting review under *State* v. *Evans.* His interpretation of our decision is inaccurate. *State* v. *Torrence* presented our first appeal from the Appellate Court, in which a single issue was certified for our review. The issue, quite similar to the one before us, involved a jury charge on insanity that incorporated both the statutory and common law definitions. The Appellate Court had held that the instructions on insanity were properly reviewable, despite the absence of an objection at trial. *State* v. *Torrence,* 1 Conn. App. 697, 702–703, 476 A.2d 598 (1984). Because of the novel posture of the case we "decline[d] the invitation of the state to consider whether improprieties in a charge on insanity are reviewable under *State* v. *Evans,* because the state so conceded in its brief to the Appellate Court, the Appellate Court so held, and the state has not filed a preliminary statement of issues in this court to revive the issue." *State* v. *Torrence,* 196 Conn. 430, 434, 493 A.2d 865 (1985). We reviewed the instructions, concluded that they were erroneous, but also found that the error was harmless. Id. Therefore, contrary to the defendant's contention in his reply brief and at argument, our decision in *Torrence* does not establish that claims of error involving the use of statutorily superseded insanity definitions not objected to at trial are necessarily reviewable under *State* v. *Evans.*[6]

---

[6] This court also had the opportunity to address the issue of reviewability of insanity instructions in the absence of a timely objection in *State* v. *Cohane,* 193 Conn. 474, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). Because we ordered a new trial on other grounds we did not address an issue similar to the one before us here, involving the intermingling of statutory and common law definitions of insanity. We did recognize, however, that "it is reversible error for the trial court to instruct a jury by reference to any superseded tests for insanity . . . provided the defendant properly excepts to the instruction." Id., 480 n.5.

The defendant does not point to any authority that declares any particular insanity definition to be constitutionally mandated. As the United States Supreme Court has recognized, "[n]othing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms." *Powell* v. *Texas,* 392 U.S. 514, 536, 88 S. Ct. 2415, 20 L. Ed. 2d 1254 (1968). In fact, until the enactment in 1967 of the predecessor to General Statutes § 53a-13, Connecticut's common law test for insanity included "both the *M'Naghten* formula to determine the actor's capacity to distinguish right from wrong and the irresistible impulse standard to ascertain his capacity for self-control." *State* v. *Toste,* supra, 631; see Public Acts 1967, No. 336, §§ 1, 2; Public Acts 1969, No. 828, § 13; *State* v. *Conte,* 157 Conn. 209, 210–11, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428 (1968); *State* v. *Davies,* 146 Conn. 137, 144, 148 A.2d 251, cert. denied, 360 U.S. 921, 79 S. Ct. 1441, 3 L. Ed. 2d 1537 (1959). The legislature did not abandon these tests and adopt the model penal code definition of insanity because the old tests were fundamentally unfair to criminal defendants or violated their constitutional rights; it merely agreed with the American Law Institute that the new provision was more "workable." Wechsler, "Codification of Criminal Law in the United States: The Model Penal Code," 68 Colum. L. Rev. 1425, 1443 (1968). "[R]ules with regard to insanity defenses are matters of state [statutory] law; therefore they do not raise issues of constitutional magnitude." *United States ex rel. Laudati* v. *Ternulo,* 423 F. Sup. 1210, 1218 (S.D.N.Y. 1976).

Under the *Evans* standard, we are not concerned with merely technical or prejudicial errors, but only with errors that deprive the defendant of a fundamental constitutional right and a fair trial. The defendant must establish "not merely that the instruction [was]

undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right which [he] was guaranteed . . . . " *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). In its charge, the court properly instructed the jury by using the statutory language three times. The mere fact that on the first and third occasions the court sought further to explain the definition of insanity by providing examples based upon statutorily superseded common law tests does not implicate any fundamental constitutional right that would afford the defendant review under the exceptional circumstances doctrine of *State* v. *Evans.* Cf. *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984) (trial court's instruction to the jury which included "heat of passion" defense when extreme emotional disturbance was raised did not clearly deprive the defendant of a fundamental constitutional right and a fair trial); *State* v. *Avcollie,* 188 Conn. 626, 638, 453 A.2d 418 (1982) (claim that insanity instruction created an impermissible presumption of sanity not reviewable); *State* v. *Green,* 172 Conn. 22, 28–29, 372 A.2d 133 (1976) (claim that charge on insanity defense shifted burden of proof to defendant not an exceptional circumstance); *State* v. *Auclair,* 33 Conn. Sup. 704, 712, 368 A.2d 235 (1976) (claim that jury charge on insanity was confusing and erroneous not reviewable as an exceptional circumstance).

B

Nor does the defendant's claim warrant review under the plain error doctrine, because we are not convinced that there was any manifest injustice under all the circumstances of the case. Practice Book § 3063 provides that this court "may in the interest of justice notice plain error not brought to the attention of the trial court." Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and pub-

lic confidence in the judicial proceedings. We have noticed plain error in the failure of a trial court to apply a clearly relevant statute to the case before it. *State v. Burke,* 182 Conn. 330, 331–32, 438 A.2d 93 (1980); *Hartford Federal Savings & Loan Assn. v. Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980). In *State v. Burke,* the plain error involved the trial court's neglecting to instruct the jury to draw no adverse inferences from the failure of the defendant to testify, despite the fact that our statutes require such an instruction.[7] In the present case the applicable statutory definition of insanity was read to the jury three times. A jury charge must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *State v. Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980). We cannot say that the inclusion of the additional insanity definitions in the charge, as instances included within the broader statutory definition, constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial. The additional language in the charge did not result in an unreliable verdict or a miscarriage of justice. Accordingly, there is no plain error in this case.

## II

The defendant also claims that he was denied his constitutionally guaranteed right to assistance of counsel in violation of the sixth and fourteenth amendments to the United States constitution, and of article first, § 8, of the Connecticut constitution. It is undisputed that the constitutional right to counsel is a right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). The defendant alleges that trial counsel's request to charge, which included previously accepted

---

[7] General Statutes § 54-84 (b); see *State v. Sinclair,* 197 Conn. 574, 500 A.2d 539 (1985); *State v. Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984).

common law insanity definitions, constituted ineffective assistance in light of our earlier decision in *State* v. *Toste,* supra, of which counsel is claimed to have been aware.

In order to establish ineffective assistance of counsel it is necessary for the defendant to prove that trial counsel's performance was not reasonably competent or within the range of ordinary training and skill in the criminal law, and if it was not, that such lack of competence contributed to the defendant's conviction. *State* v. *Rivera,* 196 Conn. 567, 570, 494 A.2d 570 (1985); *State* v. *Tirado,* 194 Conn. 89, 91–92, 478 A.2d 606 (1984); *State* v. *Chairamonte,* 189 Conn. 61, 63, 454 A.2d 272 (1983). Because it is difficult to evaluate such claims merely on the appellate record, we have frequently declined to consider them on direct appeal, suggesting that their merits be addressed through a subsequent habeas corpus proceeding or a motion for a new trial. See, e.g., *State* v. *Miner,* 197 Conn. 298, 307, 497 A.2d 382 (1985); *State* v. *Lubesky,* 195 Conn. 475, 485, 488 A.2d 1239 (1985); *State* v. *Jacobowitz,* 194 Conn 408, 413, 480 A.2d 557 (1984); *State* v. *Mason,* 186 Conn 574, 578–79, 442 A.2d 1335 (1982). Without the benefit of an evidentiary hearing available in a collateral action, review in this court of ineffective assistance of counsel claims is "at best difficult and sometimes impossible." *State* v. *Mason,* supra, 579. An evidentiary hearing can provide the court with information necessary to evaluate the competency of defense counsel and the harmfulness of any incompetency.

While the defendant recognized at argument this court's reluctance "to resolve this kind of claim upon a direct appeal rather than after a habeas corpus proceeding where facts and circumstances often not disclosed by a trial transcript can be fully developed and the lawyer who represented the defendant at trial can

be heard from''; *State* v. *Orsini,* 187 Conn. 264, 280, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); he submitted that the facts and circumstances of this case are sufficiently clear from the record to warrant direct review. He maintained that his attorney's formulation of a request to charge similar to that which was specifically denounced by this court in *State* v. *Toste,* supra, was inexcusable and, in effect, conclusive evidence of ineffective assistance. We disagree that the circumstances were such that no hearing on the competency of counsel should be afforded. The present case is one where the record on appeal does not provide any explanation for the decision of counsel to request the court to incorporate the superfluous common law definitions in its charge. Absent such information, we are unable to evaluate whether the performance of trial counsel was within the accepted range of competence. Therefore, we cannot find error on this claim. This conclusion, of course, does not preclude the defendant from pursuing this claim in an appropriate collateral action.

### III

The defendant also claims that the trial court erred by denying his request to change his election of a trial by a jury to a trial by a three judge panel, as provided by General Statutes § 53a-45 (b). On May 13, 1980, the day jury selection was scheduled to begin, the defendant made a motion for a change in venue based upon alleged pretrial publicity stemming from an article published two days earlier in the Milford Citizen that discussed the defendant's trial and his anticipated exercise of the insanity defense. The article outlined the probable expert testimony on the insanity issue and, according to the defendant, misstated the law on the number of witnesses that could testify for the state and the defendant. The defendant in his motion relied primarily on the fact that twenty-nine of forty-one veniremen

resided in Milford and were likely to have been familiar with the article in question.[8] After the court denied his motion, the defendant requested the court to allow him to withdraw his jury trial election and be tried by a panel of judges, claiming that he would not have elected a jury trial had he known of the newspaper article and the disproportionate number of jurors from Milford. The trial court denied the defendant's request and an exception was noted.

The defendant properly concedes that he has no constitutional right to a nonjury trial. *Singer* v. *United States,* 380 U.S. 24, 34, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965); *State* v. *Godek,* 182 Conn. 353, 362, 438 A.2d 114 (1980). The defendant also admits that he has no statutory or Practice Book right to change his election after his plea has been entered. See General Statutes §§ 54-82 (a), 54-82b (b); Practice Book § 839. Therefore, the defendant has the burden of showing that the trial court abused its discretion in denying his request. *State* v. *Rankin,* 102 Conn. 46, 50, 127 A. 916 (1925); *State* v. *Biller,* 33 Conn. Sup. 735, 739–40, 369 A.2d 1123 (1976); see *Hallinger* v. *Davis,* 146 U.S. 314, 13 S. Ct. 105, 36 L. Ed. 986 (1892). "If the application for such withdrawal be made seasonably, that is, so that the withdrawal will not unreasonably delay the cause, or impede justice, or otherwise prejudice the State, the court should permit it; whether the court shall do so is for its sound discretion . . . ." *State* v. *Rankin,* supra, 50. It appears that the defendant attempted to withdraw his election of a jury trial at the last moment before jury selection was to begin and that his sudden

---

[8] The defendant also asserted in support of his motion for a change in venue that the facilities in the Ansonia-Milford courthouse were inadequate to accommodate a murder trial with a twelve person jury. The defendant also made a challenge to the jury array because there was a disproportionate number of jurors from the town of Milford on the panel. This motion was also denied by the court.

preference for a trial without a jury resulted from his disappointment in the trial court's denial of a change of venue. The defendant did not meet his burden of showing that the case would not be unreasonably delayed or that the trial court abused its discretion. Nor has the defendant shown any actual prejudice resulting from the pretrial publicity. He, therefore, cannot prevail on this claim.

There is no error.

In this opinion the other judges concurred.